UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Leonard Jarvis Roper, #338094, | ) C/A No. 5:15-cv-00555-RBH-KDW |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) REPORT AND RECOMMENDATION |
| | ) |
| Joseph McFadden, Warden, | ) |
| | ) |
| Respondent. | ) |
| | ) |

Leonard Jarvis Roper ("Petitioner"), a state prisoner, filed this pro se Petition for Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C.

§ 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and Recommendation

on Respondent's Return and Motion for Summary Judgment. ECF Nos. 18, 19. Pursuant to

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary

judgment and dismissal procedures and the possible consequences if he failed to respond

adequately to Respondent's Motion. ECF No. 20. Petitioner filed a Response in opposition to

Respondent's Motion. ECF No. 26. Respondent did not file a reply to Petitioner's Response.

Having carefully considered the parties' submissions and the record in this case, the undersigned

recommends that Respondent's Motion for Summary Judgment be granted.

I.      Procedural History

Petitioner is currently incarcerated at Lieber Correctional Institution, part of the South

Carolina Department of Corrections prison system. Pet. 1, ECF No. 1. In March 2009, a Charleston

County Grand Jury indicted Petitioner on five counts of trafficking in cocaine 28-100 grams and

one count of possession with intent to distribute cocaine within the proximity of a school. App.

221-36.[1] On November 19, 2009, while represented by attorney Alex Apostolou ("plea counsel"), Petitioner pleaded guilty before Judge Roger M. Young, Sr. to five counts of trafficking in cocaine 10-28 grams and one count of possession with intent to distribute cocaine within the proximity of a school. App. 2-10, 20. During the plea hearing, Petitioner told the court that he was satisfied with his plea counsel's representation, that he had not been promised anything in exchange for his plea, that he wanted to plead guilty, and that he was doing so voluntarily. App. 6-8. Also, plea counsel responded affirmatively to the plea court's questions about Petitioner's understanding and the voluntary nature of the plea, including the effect of South Carolina's "three strikes" law on his plea. App. 9-10. In addition to the Petitioner, the Assistant Solicitor, and plea counsel, the plea court also heard testimony from an agent from the South Carolina Law Enforcement Division ("SLED") who stated that Petitioner was a "drug kingpin" and "a major player," and from another SLED agent. Both agents requested that the judge sentence him to "the maximum" allowed. App. 11-12. Plea counsel made extensive mitigating argument on Petitioner's behalf, stressing Petitioner's lack of an extensive criminal record and his family ties. App. 13-19. After hearing the SLED agents' testimony and plea counsel's argument and discussing the mandatory minimums and fines applicable to the numerous charges to which he was pleading, the plea court asked Petitioner once more if he "still want[ed] to plead guilty." To which Petitioner responded, "[y]es, sir." App. 20. Before the sentence was pronounced, Petitioner and several of Petitioner's family members and friends testified and contradicted the SLED agents' characterization of Petitioner and asked the court for mercy. App. 21-26. The plea court stated that the opposing descriptions of Petitioner that

---

[1] Citations to "App." refer to the appendix of the record that was before the PCR court. It is on the docket of this case at ECF No. 18-1. Other relevant state-court related documents that were also before the PCR court are separately docketed at ECF Nos. 18-2 through 18-5. Documents relating to the PCR appeal are docketed at ECF Nos. 18-6 through 18-12.

he heard from the witnesses made sentencing "a difficult situation," and Petitioner was sentenced to concurrent sentences of twenty years on each of the trafficking convictions and ten years on the possession with intent to distribute conviction. App. 26.

Petitioner filed a direct appeal, ECF No. 18-2, and he was represented in the appeal by Assistant Appellate Defender LaNelle C. Durant. ECF No. 18-3 at 1. Petitioner's appellate counsel filed an *Anders* brief,[2] raising the following issue on appeal:

> Did the trial court violate appellant's constitutional rights by sentencing him to a disproportionate sentence based on the information provided by the SLED agents which was outside the plea agreement.

ECF No. 18-3 at 4. Petitioner did not file a supplemental pro se brief in his direct appeal. The South Carolina Court of Appeals issued a June 1, 2011 unpublished opinion, dismissing the direct appeal and relieving appellate counsel from representation. ECF No. 18-4; *State v. Roper*, No. 2011-UP-257 (S.C. Ct. App. 2011). The remittitur issued on June 24, 2011. ECF No. 18-5.

On June 1, 2012, Petitioner filed a *pro se* PCR Application in Charleston County Court of Common Pleas, raising several grounds for relief. App. 29-42. The grounds raised in the PCR application were:

> ISSUE A. WAS PLEA COUNSEL INEFFECTIVE FOR ADVISING APPLICANT TO PLEAD GUILTY BASED ON ERRONEOUS SENTENCING ADVICE?
>
> ISSUE B. WAS COUNSEL INEFFECTIVE FOR FAILING TO RESEARCH THE LAW AND ELEMENTS OF ENTRAPMENT TO PREPARE AN ADEQUATE AND COMPLETE DEFENSE THAT DENIED APPLICANT HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE REPRESENTATION?

App. 37-39. Petitioner also alleged that plea counsel was ineffective because:

> A. counsel only [met] with the client on [a] few occasions [which was] not enough time for them to effectively prepare for trial;

---

[2] *See Anders v. California*, 386 U.S. 738 (1967) (appointed appellate counsel may move to withdraw from representation after certifying a belief that the direct appeal that counsel filed is without merit).

B. counsel did not inform the Petitioner of lesser included offenses of the charges that were pending against him at the time;

C. [counsel] called the Petitioner the morning of the trial and told him that he could get him a specific sentence, but that the Solicitor was making no offers in the case. The Petitioner at this time was told that he had two hours to make it to court clearly not enough time to make an informed or voluntary decision as to go to trial or take a plea deal;

D. [counsel] did not go over his constitutional rights and the rights that he would be giving up if he took a plea deal;

E. counsel failed to properly investigate the case; and

F. counsel failed to review or supply a copy of the discovery to the Petitioner.

App. 40-42; *Roper v. State*, No. 2012-CP-10-3594.

The State of South Carolina filed its return to the PCR application on January 23, 2013. App. 43-48. An evidentiary hearing was held before Judge Deadra L. Jefferson in Charleston, South Carolina on May 21, 2013. Petitioner was represented at the hearing by three attorneys: Jonathan S. Chaplin, Nicole L. Singletary, and Edwin D. Givens. App. 51. The State was represented by Assistant Attorney General Ashleigh R. Wilson. Testimony was presented from Petitioner, Nadia Johnson Roper, and Plea Counsel Apostolou. App. 52-138.

In his PCR testimony, Petitioner stated that his counsel was ineffective and his guilty plea was involuntary because plea counsel did not adequately discuss the State's case with him, did not file a motion to reveal the confidential information, and did not prepare and correctly advise him on the potential sentences he faced. App. 54-59. Petitioner testified that he retained plea counsel to represent him shortly after he bonded out of jail. He testified that plea counsel represented him for seven or eight months. According to Petitioner, he and his counsel met five times between the day the attorney was retained and the day that Petition entered his guilty plea. App. 54. He stated that each meeting lasted forty-five minutes to one hour. Petitioner testified that plea counsel e-mailed

the State's discovery responses to him, and that they discussed "bits and pieces" of the documents over the telephone shortly before his guilty plea. App. 55-58, 62-63. He stated that plea counsel told him that he "was to do five years" under the plea. App. 59. Petitioner acknowledged that he had admitted at the plea hearing that his counsel reviewed the State's discovery with him and that he had told the plea judge that he did not want a jury trial. App. 66-68. When questioned about the discovery that he reviewed and discussed with his attorney, Petitioner testified that he did not think that the prosecution's evidence could prove the charges that were filed against him because, even though his voice was heard on the video of the controlled buy, he was not discussing drugs as the prosecution contended. App. 66-67. Petitioner also testified that he did not think the State's evidence was sufficient to convict him because he believed that the only evidence that the prosecution had against him was a statement from an unreliable confidential informant because no drugs were found on his person. App. 56-57, 92-93. According to Petitioner, his attorney seemed knowledgeable, but he did not discuss the sentencing enhancement statute or his constitutional right to testify or his right to subpoena witnesses at trial with him. Petitioner also testified that his counsel did not explain to him that the plea judge did not have to accept the plea offer from the State. App. 60-61. At the PCR hearing, Petitioner testified that he felt that the remarks by the SLED agents at his plea "had a lot of persuasion on the judge['s] ruling, by saying … different things as far as calling me kingpins and . . . saying things that wasn't true as far as me dealing, drug cases and everything." He felt that their presence resulted in him not receiving "the minimum; I mean the five that I'd signed on." App. 68. Petitioner claimed that the matters that the agents commented upon were false, but counsel did not object. App. 68; 70. According to Petitioner, his plea counsel did not inform him that the agents would be present at the plea and he did not know whether counsel had

5

known that they were going to be present. App. 69-70. Petitioner stated that he first learned that the agents were at his plea when counsel told him that he was not prepared for them and that he was "kind of shocked that they came." App. 69. Although plea counsel did not object to the agents' remarks, Petitioner did recall counsel making a motion for reconsideration in which he contested the agents' representation that Petitioner was a "kingpin." App. 82-85. Petitioner acknowledged that his affirmative responses to the plea court's colloquy questions differed from his PCR testimony about being unhappy with plea counsel's representation. App. 89-90. He explained that all of his answers were given "under advisement of his attorney." App. 91. He said that he was "being untruthful" when he answered the plea court's questions. App. 92.

Petitioner's wife, Nadia Johnson Roper, testified that she was present in plea counsel's office on two occasions and once at the Roper's home when Petitioner and plea counsel discussed plea negotiations. App. 102-03. According to Mrs. Roper, plea counsel told Petitioner that although the maximum sentence that Petitioner could receive was twenty-five years, he had negotiated the possible sentence down to four or five years. App. 103-05. Mrs. Roper also testified that she was present when plea counsel and Petitioner discussed the plea offer on the morning of the guilty plea, and that this was when she first learned that a guilty plea was going to take place. App. 104. According to Mrs. Roper, plea counsel told Petitioner that the mandatory sentence for his charges was dropped from seven years to five years and that Petitioner would receive a five-year sentence of which Petitioner would serve four and one-half years. She stated that she and Petitioner thought that the five-year sentence was good for the family, and they left for the courthouse. App. 104-05. She testified that when they were in court, plea counsel seemed nervous because SLED agents were present for the hearing. App. 105-06. Mrs. Roper stated that she was certain that plea counsel did

6

not tell Petitioner that he could be sentenced to between five and twenty-five years. App. 106-07.

In his PCR testimony, plea counsel testified he had been practicing criminal law for six or seven years and had tried approximately ten serious cases, including trials on drug-related charges, at the time that Petitioner retained him. He stated that his previous practice was as a member of the Charleston County Solicitor's Office. App. 110-11. He testified he met with Petitioner five times and was unable to meet with him more frequently even though he thought that they should have met more often. He stated that "Mr. Roper had already been on the plea docket before he retained me. I knew from my discussions with the State … that they were taking it as a very serious case." He also stated that he informed Petitioner that this was "a very serious matter and that we needed to talk often about the case," but that Petitioner did not come and meet with him as much as he would have liked. App. 111. Plea counsel stated that he had trouble getting in contact with Petitioner and that his inability to get into contact with his client further limited the number of times that they met. App. 134. Plea counsel stated that even though he and Petitioner did not meet that often, he filed discovery motions pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and Rule 5 of the South Carolina Rules of Criminal Procedure. Counsel stated that he received all of the Assistant Solicitor's file, which included police reports, a video, and "several wiretap conversations between [Petitioner and] the confidential informant." Counsel also testified that sent this information to Petitioner by e-mail and that they "had some basic conversations about it." App. 112-13. Plea counsel also testified that he conducted a preliminary hearing on Petitioner's behalf, but that Petitioner did not provide the names of any possible witnesses for counsel to call. App. 114-15. Plea counsel stated that he discussed the elements of the pending charges and what the State was required to prove to convict with Petitioner before Petitioner entered his guilty plea. He also stated that he heard Petitioner's version of the facts, including Petitioner's assertions that the confidential informant lacked credibility. He stated

7

that he discussed possible defenses that could be used at trial with Petitioner, including a defense based on the confidential informant's lacking credibility. App. 113, 123-24, 133.

Regarding the nature and extent of the prosecution's evidence against Petitioner, counsel stated:

> The State's evidence was that there [were] five buys, all with the same confidential informant. The precursor to those buys, the calls from the confidential informant to Mr. Roper[,] were recorded by wiretap. Then the confidential informant met with, I think, two of the buys. Two of the buys, I think, were controlled by SLED. Two of them, I think, were controlled by the police department. The confidential informant meets with the police department, they're in a room, they search him, no contraband. They give him some controlled buy money. He meets with the defendant, he comes back, doesn't have the controlled buy money but has narcotics.

App. 113-14. He also testified that he was "always in negotiation with the State" after he was retained by Petitioner, and was trying to "get [the Assistant Solicitor] to come off the mandatory minimums," and that the only offer he was able to get was the one to which Petitioner pleaded. App. 115-16. According to counsel, "[w]e were able to get the State to come down off mandatory minimum from twenty-eight to one hundred [grams] to the ten to twenty-eight [grams] category," and that his "recollection of those [discussions with Petitioner] is that I communicated to him that the mandatory minimum would be reduced from seven to five." He also stated that "[t]he law has subsequently changed since this, but I think that it was five to twenty-five at that point." App. 117. Counsel stated that he communicated the State's offer to Petitioner by telephone, through Mrs. Roper, and he denied telling Petitioner that he would receive a five-year sentence by pleading guilty. App. 117-18. He stated that when Mrs. Roper called him and indicated that she was under the impression that Petitioner would only receive a five-year sentence, he "called [Petitioner] back after that and had a conversation with him that it wasn't a guarantee of five years, that it was a range of five to twenty-five [years]." App. 118. Plea counsel testified that he discussed the consequences of pleading guilty with Petitioner, including the constitutional rights that Petitioner was waiving by pleading guilty such as his right to remain silent, his right to a jury trial, and his right to confront his witnesses. He stated that Petitioner never indicated that

he did not understand this discussion and that it was Petitioner's decision to plead guilty. App. 118-19. Plea counsel denied threatening Petitioner or making any promise to him in order to get him to plead guilty, App. 119-20, and stated that he and Petitioner met enough for counsel to properly advise Petitioner about the plea and what the court expected of him at the plea. He also testified that Petitioner understood that he was waiving his right to a jury trial and all the rights that go along with a trial, and that he understood that he had to admit his guilt at the plea hearing. App. 121-22. According to plea counsel, he and Petitioner "did discuss the options of going to trial and what we could attempt to do at trial . . .  a couple of times," although counsel admitted that he did not recall the specific number of times they discussed a trial. App. 124-25.

Plea counsel stated that he found out that the SLED agents were going to testify on the day of the plea hearing, and that the plea court had already accepted Petitioner's plea before the agents testified. App. 127-31. With respect to the testimony from the SLED agents at Petitioner's plea hearing, plea counsel testified that he recalled that the agents said that Petitioner was a "kingpin," but that Petitioner's mother and his uncle denied this. According to plea counsel, the substance of the motion to reconsider that he filed after the trial court entered the sentence was that the "plea agreement was reached between [Petitioner] and the State, and then the SLED officers . . . said things that I think exacerbated the situation and we hoped that the judge would reconsider the sentence in light of those statements." App. 120. Plea counsel testified that he thought that his arguments made in the motion were preserved for appellate review. App. 121. On cross-examination, plea counsel testified that he learned the SLED agents would be present when he saw them at the courthouse. He said that the Assistant Solicitor told him that "SLED was furious that she'd reduced the charge, [and] that they were driving in from Columbia." App. 127. Plea counsel testified that he did not recall "a case where SLED officers had driven from Columbia for a

plea," and that he did not recall what had occurred at a sidebar during the plea, but he was unhappy with the agents there. App. 128. Counsel also testified that he had hoped to meet with the plea judge in chambers before the plea, but was unable to do so because the Assistant Solicitor did not agree to such a meeting. App. 129. He stated that the Assistant Solicitor asked the judge to give Petitioner "'substantial'" time, but that the SLED agents asked him to give Petitioner the "maximum sentence." App. 130. Plea counsel stated that the Assistant Solicitor felt that she might hear from her superiors and SLED as the result of reducing the charges, but that she offered the plea anyway. App. 131. Plea counsel admitted that Petitioner had not been prosecuted for some of the things that were mentioned by the SLED agents during the plea hearing, but that he did not object to their statements. App. 132-33. When asked why he had not objected to the agents' comments when they were made, plea counsel testified "that was a difficult situation. I was balancing a lot of different factors there." He also stated that with "hindsight being twenty/twenty, I wish that I had objected." App. 131. However, he testified that he felt that he "could head off some of what they were saying" in connection with his mitigation arguments. App. 135. Counsel further explained that:

> In that situation, there [are] a lot of different factors that you consider:
>
> Does law enforcement have the ability to present their case?
>
> Yes.
>
> Is the plea agreement between the parties based on facts?
>
> Yes.
>
> Did law enforcement add things in there?
>
> Yes.
>
> So that was the basis of my Motion to reconsider, yes.

App. 132.

According to plea counsel's testimony, when he advises clients on whether or not to go to trial or plead guilty, he does not "advise [his] clients [on the course to take]." App. 133. He stated that he tries "to give them an informed decision if they ask [his] opinion[]," l and that he tells them what he thinks, but he doesn't "advise them." He testified that he tries "to let them have an informed decision about all the consequences and benefits." App. 133-34. Plea counsel said that he presented all of the evidence and all of the options to Petitioner and that Petitioner decided to plead guilty. App. 136. With specific reference to the situation that Petitioner found himself in and his resulting consultation with Petitioner, counsel stated:

> I think what the ultimate situation was, you know, he'd been on the plea docket prior to that, in September and October. When he'd come to the court . . . I had communicated to him and when he had come to the court, he'd actually had communication with the prosecutor. The prosecutor actually gave him a talking-to, which included the possibility of going to trial five times. That furthered the possibility of a sentence of life without the possibility of parole. So, . . . that was in the conversation at that time.
>             . . . .
>
> I think that I probably told him that a plea would make sense in this situation.

App. 137.

PCR Judge Jefferson denied relief on September 24, 2013 through an amended order of dismissal. The PCR court issued the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the hearing and to closely pass upon his or her credibility. This Court has weighed the testimony accordingly. Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).

## Summary of Testimony

The Applicant testified at the evidentiary hearing that he retained Alex N. Apostoulou, Esquire to represent him shortly after bonding out of jail. He testified

he met with counsel five (5) times prior to pleading guilty for forty-five (45) minutes to one (1) hour each time. He testified counsel e-mailed the discovery to him and they discussed the documents by phone shortly before the guilty plea. He also testified they reviewed the video of his controlled buy and the officer's statement. The Applicant conceded the voice on the video they received of the controlled buy was his voice however he contends he was not discussing drugs on the video.

The Applicant testified he felt the State had no evidence against him and his case was solely based on a statement from a confidential informant. He testified counsel should have made a motion to obtain the identity of the confidential informant. The Applicant then conceded he was aware of the identity of the confidential informant and spoke with counsel about the credibility of the informant. He further testified he did not review the drug analysis with counsel prior to his plea. He testified counsel should have investigated the drug analysis done in his case. The Applicant testified counsel also did not discuss potential witnesses that they could call at trial.

The Applicant testified counsel came to him the week of the guilty plea with a plea offer from the State. He testified counsel told him he would receive five (5) years if he pled guilty. He acknowledged his attorney seemed knowledgeable. He testified counsel did not discuss his constitutional rights, the enhancement statute, or his right to testify. He also testified counsel did not explain to him that the court did not have to accept the plea offer from the State.

The Applicant testified counsel did not investigate his case. He testified had counsel investigated, he would have discovered problems with his case, the location of the buys, and the video and audio of the buys. The Applicant also testified trial counsel did not tell him SLED officers would be present at his guilty plea and their presence alarmed them. He testified the SLED officers called him a "kingpin" at the guilty plea. The Applicant recalled his uncle and mother telling the court he was not a "kingpin" at his guilty plea. He testified the court would take the word of law enforcement officers over that of his family. He also recalled counsel filing a Motion to Reconsider Sentence based on the statements of the SLED officers.

The Applicant testified he pled guilty because he was uncomfortable with counsel's representation and because he did not want to go to trial. He testified he also accepted the plea because the time was short enough for him to be away from his wife and kids. The Applicant then testified he now wants to go to trial to face his original charges since he did not receive a five (5) year sentence.

Nadia Johnson Roper, the Applicant's wife, also testified at the evidentiary hearing. She testified she attended three (3) meetings with counsel and that all of them were not at the attorney's office. She testified that one of the three meetings was at the Applicant's parent's home. She testified the meetings were not in depth. She testified she was not privy to all of the conversations her husband had with his attorney. Mrs. Roper also testified the Applicant and counsel discussed the plea negotiations the morning of the guilty plea. She testified counsel told the Applicant

that the mandatory sentence for his charges was dropped from seven (7) years to five (5) years and the Applicant would be sentenced to five (5) years. She testified they thought five (5) years was good for the family. However, she testified she was aware the maximum exposure for the offenses was at least twenty-five (25) years. Lastly, she testified she was certain counsel did not say the Applicant could be sentenced between five (5) and twenty five (25) years in prison.

Alex N. Apostolou, Esquire, testified he has spent the last ten (10) years practicing criminal law. He testified when he was retained to represent the Applicant he had been practicing for six (6) to seven (7) years and had tried approximately ten (10) serious cases. His previous practice was in the solicitor's office. He testified he met with the Applicant five (5) times and was unable to meet with him more frequently. Counsel testified he tried to communicate to the Applicant and his family the serious nature of the charges he was facing, but it was difficult to get in touch with the Applicant, which contributed to the communication problems. He testified he felt they should have met more times because the case was already on the plea docket several times before he was retained. He testified he tried to talk and meet with the Applicant more often however the applicant was uncooperative. He testified as a result he went to the applicant's parent's home for a meeting to convey the "monster serious" nature of the case and the fact that they needed to have an [sic] "aggressive conversations" about it.

Counsel testified he filed <u>Brady</u> and Rule *5* motions on the Applicant's behalf. He testified he met with the assistant solicitor in her office to receive the discovery and sent a copy to the Applicant. He testified further they had some basic conversations about the State's evidence. Counsel testified he discussed with the Applicant the elements of the charges, what the State was required to prove, possible defenses, the confidential informant's lack of credibility and the Applicant's version of the facts. He testified there was evidence of five (5) different buys on [sic] initiated by a recorded call (audio) all with the same confidential informant following the same pattern of the confidential informant calling the applicant followed by a controlled buy. He testified there were no witnesses other than the video, audio and the confidential informant.

Counsel testified his investigation of the case included a review of all discovery and a review of the video of the controlled buys. Counsel testified he was present at the preliminary hearing and was able to question all the officers and meet with the Solicitor to discover all the evidence against the Applicant. He further testified he was not aware of any additional investigation that needed to be done in the Applicant's case.

Counsel testified he was aware of the identity of the confidential informant and did not need to file a motion to obtain his identity. Counsel testified he discussed proceeding to trial as an option with the Applicant and told him what would happen if he went to trial. He testified he discussed a motion to suppress the drugs with the

13

Applicant and would have filed such motion had the Applicant indicated he wanted to proceed to trial.

Counsel testified the Applicant was on the plea docket prior to him being retained. He testified he was always in plea negotiations with the State and wanted to obtain a plea offer for the Applicant. He testified the State offered a plea to a lesser included offense that would reduce the minimum mandatory sentence from seven (7) years to five (5) years. He testified the Applicant would be pleading to a range of sentences from five (5) to twenty five (25) years in prison. Counsel testified he communicated the offer and he never told the Applicant he would be guaranteed a sentence of five (5) years. Counsel testified he did not advise the Applicant on whether to accept or reject the plea offer. He testified that he advised him of the pros and cons of a plea so that he could make an informed decision however under the circumstances he probably told him a plea made sense in this situation. He testified he let the Applicant make his own decision. He further testified the day before the Applicant's plea, his mother in law told him that the Applicant thought he would be getting a five (5) year sentence. Counsel testified after speaking with the Applicant's mother in law, he called the Applicant and told him that a five (5) year sentence was not guaranteed. He testified further that the Applicant never told him he desired a trial on these charges.

Counsel testified he was unaware the SLED agents would be present at the guilty plea until the morning of the plea upon arriving at court. He testified he found out the SLED officers had driven down for the plea because they were "furious" regarding the reduction in the charges. He testified the State was requesting a sentence of substantial jail time and he was aware the State was communicating with SLED. Counsel testified he was balancing several factors during the guilty plea such as law enforcement's right to be present at the plea, ensuring the plea was based on the facts and avoiding any further agitation of law enforcement regarding his client's sentence exposure. He further testified that he attempted a sidebar with the solicitor and the court because of the volatility he perceived however the solicitor would not do it. He further testified that he made a strategic decision to head this off with the substantial mitigation evidence he presented on the Applicant's behalf that would have refuted the officers' characterization of the Applicant. He testified in hindsight he wished he had objected however he was trying to balance his client's best interests at the time. Counsel testified he filed a motion to reconsider based on the SLED officer's statements to the court which was denied.

### Ineffective Assistance of Counsel

The Applicant alleges that he received ineffective assistance of counsel. In a post-conviction relief action, the applicant has the burden of proving the allegations in the application by a preponderance of the evidence. Rule 71.l(e), SCRCP; Butler v. State, 286 S.C. 441, 441, 334 S.E.2d 813, 814 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process

14

that the trial cannot be relied upon as having produced a just result." <u>Strickland v. Washington</u>, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984); <u>Butler</u>, 286 S.C. at 442, 334 S.E.2d at 814.

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. <u>Strickland</u>, 466 U.S. at 687-90, 104 S. Ct. at 2064-66. The courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. <u>Id</u>. The applicant must overcome this presumption in order to receive relief. <u>See id</u>.; <u>State v. Cherry,</u> 300 S.C. 115, 118, 386 S.E.2d 624, 625 (1989).

Courts use a two-pronged test to evaluate allegations of ineffective assistance of counsel. First, the applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "'reasonableness under professional norms.'" <u>Id</u>. (citing <u>Strickland</u>, 466 U.S. at 688, 104 S. Ct. at 2065). Second, counsel's deficient performance must have prejudiced the applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 117-18, 386 S.E.2d at 625 (citing <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. at 2068). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial." <u>Johnson v. State</u>, 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997) (citing <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. at 2068). When there has been a guilty plea, the applicant must prove that counsel's representation was below the standard of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59, 106 S. Ct. 366, 370 (1985); <u>Roscoe v. State</u>, 45 S.C. 16, 20, 546 S.E.2d 417, 419 (2001) (citing <u>Hill</u>, 474 U.S. at 59, 106 S. Ct. at 370; <u>Jackson v. State</u>, 342 S.C. 95, 98, 535 S.E.2d 926, 927 (2000); <u>Thompson v. State</u>, 340 S.C. 112, 115, 531 S.E.2d 294, 296 (2000); <u>Rayford v. State</u>, 314 S.C. 46, 48, 443 S.E.2d 805, 806 (1994).

To be knowing and voluntary, a plea must be entered with a full understanding of the charges and the consequences of the plea. <u>Boykin v. Alabama</u>; 395 U.S. 238, 242, 89 S. Ct. 1709, 1712 (1969); <u>Dover v. State</u>, 304 S.C. 433, 434, 405 S.E.2d 391, 392 (1991) (citing <u>State v. Hazel</u>, 275 S.C. 392, 394, 271 S.E.2d 602, 602 (1980)). When determining issues relating to guilty pleas, the court will consider the entire record, including the transcript of the guilty plea, and the evidence presented at the post-conviction relief hearing. <u>Anderson v. State</u>, 342 S.C. 54, 57, 535 S.E.2d 649, 650 (2000) (citing <u>Harres v. Leeke</u>, 282 S.C. 131, 133, 318 S.E.2d 360, 361 (1984)). When a defendant pleads guilty on the advice of counsel, the plea may only be attacked through a claim of ineffective assistance of counsel. <u>Roscoe</u>, 345 S.C. at 20, 546 S.E.2d at 419 (citing <u>Al-Shabazz v. State</u>, 338 S.C. 354, 363-64, 527 S.E.2d 742, 747 (1999)).

This Court finds counsel is a trial practitioner who has extensive experience in the trial of serious offenses. Counsel conferred with the Applicant on several occasions. During conferences with the Applicant, counsel discussed the pending charges, the elements of the charges and what the State was required to prove, the Applicant's constitutional rights, the Applicant's version of the facts, and possible defenses or lack thereof. The record reflects the Applicant's plea was entered freely, voluntarily, knowingly, and intelligently.

Regarding the Applicant's claims of ineffective assistance of counsel, this Court finds the Applicant has failed to meet his burden of proof. This Court finds that the Applicant's attorney demonstrated the normal degree of skill, knowledge, professional judgment, ·and representation that are expected of an attorney who practices criminal law in South Carolina. State v. Pendergrass, 270 S.C. 1, 4-5, 239 S.E.2d 750, 751-52 (1977); Strickland, 466 U.S. at 687-88, 104 S. Ct. at 2064-65; Butler, 286 S.C. 442, 334 S.E.2d 814 (1985) (citing Strickland, 466 U.S. at 687-88, 104 S. Ct. at 2064-65; Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985), rev'd on other grounds, Turner v. Murray, 476 U.S. 28, 106 S. Ct. 1683 (1986); Marzullo v. Md., 561 F.2d 540, 544 (4th Cir. 1977)).

### Failure to investigate the Petitioner's case

This Court finds counsel was not ineffective for failing to investigate the Applicant's case. "[C]riminal defense attorneys have a duty to undertake a reasonable investigation, which at a minimum includes interviewing potential witnesses and making an independent investigation of the facts and circumstances of the case." Walker v. State, 397 S.C. 226, 235, 723.S.E.2d 610, 615 (Ct. App. 2012) (citing Edwards v. State, 392 S.C. 449, 456, 710 S.E.2d 60, 64 (2011)). "An attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense." Harrington v. Richter, 131 S. Ct. 770, 789-90 (2011). "Failure to conduct an independent investigation does not constitute ineffective assistance of counsel when the allegation is supported only by mere speculation as to the result." Moorehead v. State, 329 S.C. 329, 334, 496 S.E.2d 415, 417 (1998) (citing Kibler v. State, 267 S.C. 250, 256, 227 S.E.2d 199, 202 (1976)).

This Court finds the Applicant has failed to show specific circumstances that would have resulted had counsel further investigated his case. Counsel gave credible testimony that he fully investigated the Applicant's case and was fully aware of the State's evidence against the Applicant. This Court finds and the record reflects through counsel's testimony that counsel conducted an independent investigation of the facts and circumstances of the case. This Court finds that this allegation is without merit and the Applicant has failed to carry his burden of proving counsel provided ineffective assistance of counsel for failing to investigate his case.

### Failure to object to improper statements that were made at the guilty plea

16

This Court finds counsel was not ineffective for failing to object to what the Applicant has characterized as improper statements that were made at the Applicant's guilty plea. The Applicant alleges counsel should have objected to testimony from SLED officers during his guilty plea in which the officers referred to the Applicant as a drug "kingpin." This Court finds counsel's failure to object did not result in deficient performance. Counsel provided credible testimony that during the guilty plea he was concerned with balancing the Applicant's best interests in not further antagonizing the law enforcement officers and choosing instead to counteract the situation by presenting substantial mitigation on the Applicant's behalf. This Court finds counsel's concerns were valid. This Court finds the presence of SLED officers at a guilty plea for a case in which they have an interest is not uncommon. This Court finds further that counsel provided substantial evidence in mitigation for the Applicant which weighed against the SLED officers' characterization of the Applicant as a "kingpin." This Court finds the Applicant could have chosen to withdraw his guilty plea after the officers' statement, but instead affirmed his desire to plead guilty. (Tr. 20:5-6).

This Court further finds that no prejudice resulted from counsel's failure to object to this testimony since, after the Applicant's plea; counsel filed a Motion for Reconsideration of Sentence based on the Applicant's disagreement with the statements made by the SLED officers during the plea. While the Motion for Reconsideration was denied, the issue was properly preserved for review by the Court of Appeals. After review of the issue and the entire record pursuant to <u>Anders v. California</u>, [386 U.S. 738, 87 S. Ct. 1396 (1967)] (footnote omitted), [t]he Court of Appeals dismissed the Applicant's appeal. This Court finds this allegation is without merit and the Applicant has failed to carry his burden of proving counsel was ineffective for failing to object to improper statements that were made at the guilty plea.

### Advised the Applicant to plead guilty based on erroneous sentencing advice

This court finds counsel was not ineffective for providing erroneous sentencing advice to the Applicant. At the evidentiary hearing, the Applicant alleged counsel told him he was pleading guilty to a five (5) year sentence and that he pled guilty with the understanding he would receive a five (5) year sentence. This Court finds the Applicant's testimony lacks credibility. This Court finds counsel provided credible testimony that he did not advise the Applicant ·that he would receive a five (5) year sentence. Counsel testified he advised the Applicant that he would be pleading to a lesser included offense which lowered the mandatory minimum sentence from seven (7) years to five (5) years. Counsel also provided credible testimony that when he learned the Applicant thought he was pleading guilty to five (5) years, he called the Applicant to reiterate the plea offer to a lesser included offense with a lower minimum mandatory sentence of five (5) years.

17

This Court finds the Applicant was aware of the exposure he was facing and advised of the potential sentences he was facing by the court. The court advised the Applicant that the trafficking cocaine charge for which he was originally indicted earned a potential sentence ranging from seven to thirty years. (Tr. 3:18-22.) The court advised the Applicant that the State was allowing him to plead to trafficking cocaine 10-28 grams which carried a potential of five to thirty years. (Tr. 3:18-22.) The Applicant was subsequently and repeatedly advised of the mandatory minimum five years on the trafficking charges. (Tr. 19:21-25.) The court also advised the Applicant that he could have been facing life without the possibility of parole (Tr. 4:14-23), that he was pleading to three strike offenses (Tr. 4:14-23), and that the charges were considered violent, which would affect his parole eligibility. (Tr. 5:4-15.) The Applicant told the court during his guilty plea that no one promised him anything to get him to plead guilty other than the reduction of charges. (Tr. 8:11-22.) This Court finds the Applicant's discussion with the court and his high level of education (Tr. 9:1-4) indicates he was well aware of the consequences of his guilty plea and that he was facing a potential sentence between five (5) to thirty (30) years. The Applicant stated to the court during mitigation that he "[couldn't] believe [he] allowed [himself] to be in this situation." (Tr. 25:14-16.) During the colloquy with the court, the Applicant admitted his guilt (Tr. 6:9-12), indicated he was not under the influence of any drugs or alcohol (Tr. 6:13-15), and was not suffering from any physical, mental, or emotional conditions affecting his understanding of the proceedings. (Tr. 6:16-19.) The Court informed the Applicant of his right to a jury trial and his right to challenge the State's evidence, and the Applicant indicated he still wished to plead guilty. (Tr. 5:16-6:5.) The Applicant also told the court that it was his decision solely to plead guilty. (Tr. 8:8-10.) Additionally, the Applicant communicated to the Court that he was satisfied with his attorney and did not need additional time to speak with him. (Tr. 6:20-8:7.) Applicant's attorney provided mitigation to the court by discussing Applicant's education, work history, lack of weapons involved, and family life, (Tr. 14-19), as well as providing many friends and family to speak on his behalf. (Tr. 20-25.) This Court finds the record contains no evidence the State offered or the parties agreed upon any guaranteed recommended or negotiated sentences. This Court finds that this allegation is without merit and the Applicant has failed to carry his burden of proving counsel was ineffective for providing erroneous sentencing advice.

**<u>Failure to file a motion to discover the identity of the confidential informant</u>**

This Court finds trial counsel was not ineffective for failure to file a motion to discover the identity of the confidential informant. This Court finds this issue is moot since both the Applicant and counsel testified they knew the identity of the confidential informant. This Court further finds it is unlikely the Applicant would have benefitted from the filing of such a motion by counsel as doing so would have likely halted all plea negotiations with the State. This Court finds that this allegation is without merit and the Applicant has failed to carry his burden of proving counsel

18

was ineffective for failing to file a motion to discover the identity of the confidential informant.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the <u>Strickland</u> test, specifically that counsel failed to render reasonably effective assistance under prevailing professional norms. <u>See Strickland</u>, 466 U.S. at 688, 104 S. Ct. at 2065. The Applicant failed to present specific and compelling evidence that counsel committed either errors or omissions in her [sic] representation of the Applicant. The Applicant failed to show that counsel's performance was deficient. Therefore, this Court need not address prejudice. <u>See id</u>. at 694, 104 S. Ct. at 2068. Applicant's complaints concerning counsel's performance are without merit and are denied and dismissed.

## **CONCLUSION**

Based on the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his guilty plea and sentencing proceedings. Counsel was not deficient in any manner, nor was the Applicant prejudiced by counsel's representation. Therefore, this application for PCR must be denied and dismissed with prejudice.

App. 189-220.

Petitioner filed an appeal from the PCR dismissal. ECF No. 18-6. On October 8, 2014, his PCR appellate attorney, Deputy Chief Appellate Defender Wanda H. Carter, filed a *Johnson* petition[3] raising this point: "Trial counsel erred in failing to fully explain sentencing consequences to petitioner in his case." ECF No. 18-7 at 3.

On January 15, 2015, the South Carolina Supreme Court noted that Petitioner did not submit a pro se petition and denied the *Johnson* petition for writ of certiorari without discussion and granted Petitioner's PCR appellate counsel's request to withdraw from representation. ECF No. 18-8. The appellate remittitur issued on February 2, 2015. ECF No. 18-9.

II.     Discussion

_____

[3] *See Johnson v. State*, 364 S.E.2d 201 (1988), addressing the procedures for counsel to follow when filing what they perceive to be meritless appeals in state PCR cases pursuant to *Anders v. California* and requesting to be relieved from representation.

19

### A.     Federal Habeas Issues

Petitioner raises the following issue in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

"Ground One: Ineffective Assistance of Counsel (6th Amendment violation)"

"Plea Counsel was ineffective for failing to fully explain sentencing consequences to Petitioner." Pet. 5, ECF No. 1. In an Amended Petition, Petitioner added two additional issues for consideration, also quoted verbatim:

> Ground Two: Ineffective Assistance of Counsel (6th Amendment violation)
>
> Supporting Facts: Plea Counsel was ineffective for failing to withdraw Petitioner's guilty plea or communicate to Petitioner that he could withdraw his guilty plea.
>
> . . . .
>
> Ground Three: Ineffective Assistance of Counsel (6th Amendment violation)
>
> Supporting Facts: Plea Counsel was ineffective for failing to file a motion to suppress the drugs based upon the unreliability of the confidential informant or communicate to Petitioner that such motion can be filed.

ECF No. 1-2.

### B.     Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents,

20

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

C.     Habeas Corpus Standard of Review

1.     Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved

21

an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

### a.    Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 563 U.S. 170 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 102. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. In *Harrington*, the Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id*.; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

[A] federal court may grant a writ of habeas corpus if the relevant state-court

22

> decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. 362, 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

      b.      Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of

23

counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id*. at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id*. at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 563 U.S. at 190.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 181. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 182. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id*. at 179. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id*. at 180. The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 563 U.S. at 181. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." *Id*. at 182 (internal citation and quotation marks omitted).

24

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." 526 U.S. at 101.

### 2.     Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate, but related, theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas-corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a.     Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that –

25

(A)    the applicant has exhausted the remedies available in the courts of the State; or

(B)    (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state-court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing a PCR application. State law requires that all grounds be stated in the direct appeal or PCR application. SCACR 203; *see* S.C. Code Ann. §§ 17-27-10 through 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).   If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines

26

govern direct appeals and the filing of a PCR application in South Carolina courts. A PCR application must be filed within one year of judgment, or, if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or to the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas-corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal

27

that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984). However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)). Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165-66

28

(1996). To overcome Respondent's contention, it is Petitioner's burden to raise cause and prejudice or actual innocence. If not raised by Petitioner, the court need not consider the defaulted claim. *See generally Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995).

c.      Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495-96; *see Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) ("A prisoner may obtain federal review by showing cause for the default and prejudice from a violation of federal law.") (quoting *Coleman*, 501 U.S. at 750). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

3.      Claims of Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Petitioner bears the burden of proving an error and

prejudice in his ineffective-assistance-of-counsel claim. *Id*.

4.    Claims    of

Involuntary Guilty Plea

A guilty plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant," *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), and may be invalid if it was induced by threats or misrepresentations. *See Brady v. United States*, 397 U.S. 742, 755 (1970). However, a defendant's statements at the guilty-plea hearing are presumed to be true. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Unsupported allegations on appeal or in a collateral proceeding are insufficient to overcome representations made during the guilty-plea hearing. *See Via v. Superintendent, Powhatan Corr. Ctr.*, 643 F.2d 167, 171 (4th Cir. 1981) (holding that statements at plea hearing that facially demonstrate plea's validity are conclusive absent compelling reason why they should not be, such as ineffective assistance of counsel).

III.    Analysis

A.    Waived Grounds

In his Response to Respondent's Motion for Summary Judgment, Petitioner withdraws both his Ground One and Ground Three. ECF No. 26. Petitioner states that he "concedes that his Ground One was not contrary to and did not involve an unreasonable application of clearly established federal law. Therefore, Petitioner hereby withdraws his Ground One." *Id*. at 1. With regard to his Ground Three, Petitioner states, "Petitioner hereby withdraws his Ground Three because it lacks merits." *Id*. at 4. Accordingly, the undersigned accepts Petitioner's concessions regarding his withdrawal of Grounds One and Three and recommends that summary judgment on those Grounds be granted in favor of Respondent.

B.    Procedurally Barred Ground: Ineffective Assistance of Counsel in Failing to

30

Withdraw Petitioner's Guilty Plea or Advise Petitioner to do so Following the SLED Agents' Testimony

           1.     The     Parties'

Positions

With regard to Petitioner's Ground Two, Respondent contends that it is not properly before this court because it was procedurally bypassed. Respondent states that this point was presented to and rejected by the PCR court, but that it was not presented for review to the PCR appellate court by either Petitioner's appellate counsel or by Petitioner through a pro se petition for writ of certiorari. ECF No. 18 at 22. Respondent contends that this court should not consider this Ground because Petitioner cannot prove either cause for or prejudice from the bypass because he did not file a pro se petition in his PCR appeal; his PCR appellate counsel's error in not raising the issue, if any, does not support application of the "cause" exception established by *Martinez v. Ryan*, 132 S. Ct. 1309 (2012);[4] and because plea counsel effectively challenged the statements made by the SLED agents during the plea hearing and through a post-sentencing motion to reconsider and Petitioner consistently stated that he wished to plead guilty throughout the plea colloquy. ECF No. 18 at 23, 24, 32-33. Petitioner responds that Respondent mischaracterizes this Ground as raising plea counsel's ineffectiveness in not objecting to the SLED agents' testimony during the plea hearing, which issue was raised before and considered by the PCR court but not to the PCR appellate court.

---

[4] Respondent is correct in this assertion; however, appellate counsel ineffectiveness is not the basis of Petitioner's stated Ground; he asserts ineffectiveness of his PCR counsel. *See Hodges v. Colson*, 727, F.3d 517, 531 (6th Cir. 2013) ("Under *Martinez's* unambiguous holding our previous understanding of *Coleman* in this regard is still the law – ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel."); *Banks v. Workman*, 692 F.3d 1133, 1148 (10th Cir. 2012) ("*Martinez* applies only to a prisoner's procedural default of a claim of ineffective assistance at trial, not to claims of deficient performance by appellate counsel.") (internal quotes omitted).

Petitioner states that his Ground Three is not based on the failure of plea counsel to object to the testimony, but, instead, is based on plea counsel's failure to withdraw the guilty plea or advise Petitioner to withdraw it in light of the SLED agents' testimony. Petitioner asserts that this issue was not raised before the PCR court due to the ineffectiveness of his PCR counsel. ECF No. 26 at 2. Citing to *Martinez v. Ryan*, Petitioner contends that his PCR counsels' ineffectiveness provides the required "cause" for the procedural bypass because his current claim of plea counsel ineffectiveness is "substantial" and that he was "prejudiced" by the ineffectiveness because he did not move to withdraw the guilty plea either before or after the SLED agents' testimony. *Id*. at 2-4.

Following review of the record, the undersigned finds that although the PCR court explicitly rejected Petitioner's assertion that plea counsel was ineffective for failing to object to the testimony given by the two SLED agents in connection with the sentencing aspect of Petitioner's guilty plea proceeding, App. 200-01, the issue of whether or not plea counsel was ineffective for failing to withdraw the guilty plea or advise Petitioner to do so was not raised in the PCR application or explicitly discussed during the PCR hearing or in the PCR court's order. Also, that issue was not raised in the appeal from the dismissal of Petitioner's PCR case. ECF No. 18-7. Review of the record indicates that the first time Petitioner asserted this Ground for relief from his conviction and sentence was in the Amended Petition that he submitted to this court on February 25, 2015. ECF No. 11-1 (envelope with date of submission mark from "Mail Room Lieber C.I."). Accordingly, before any consideration of the merits of Ground Two, this court should consider whether Petitioner can meet the requirements for excuse of procedural bypass as modified by the *Martinez v. Ryan* opinion.

In *Martinez v. Ryan*, cited by Petitioner, the United States Supreme Court determined only that ineffective assistance of PCR counsel may be used by a habeas petitioner to show or satisfy the "cause" requirement for avoidance of procedural default of an otherwise clearly stated claim of ineffective assistance of trial counsel. 132 S.Ct. at 1320. If a state requires a prisoner to raise ineffective assistance of trial counsel in a collateral proceeding, the *Martinez* Court determined a prisoner may establish cause for a default of an ineffective-assistance claim in the following two circumstances:

> [1] where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial [and 2] where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Id.* at 1318. Petitioner's Ground Two is admittedly procedurally defaulted from habeas review, but, as stated previously, Petitioner maintains that *Martinez* establishes "cause" for the default. However, to overcome the default, *Martinez* requires Petitioner to demonstrate that the underlying ineffective assistance-of-counsel claim is substantial or has merit. *See id.* Also, even if Petitioner could successfully prove that his trial counsel acted unreasonably, he still must prove that his unreasonable performance was prejudicial. Additionally, applicable law holds that where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. *Hamilton v. Warden, Lieber Corr. Inst.*, No. 5:13-2506-MGL, 2015 WL 251243, at *17 (D.S.C. Jan. 20, 2015) (noting that where trial strategy is concerned in an ineffective-assistance-of-counsel claim, the United States Supreme Court has stated, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that

33

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"); *Whitehead v. State,* 417 S.E.2d 530 (S.C. 1992); *see also Dempsey v. State,* 610 S.E.2d 812 (S.C. 2005). Furthermore, it is presumed that a defendant's statements at the guilty-plea hearing are presumed to be true. *Blackledge v. Allison*, 431 U.S. at 73-74, and unsupported allegations on appeal or in a collateral proceeding of lack of information or inadequate advice from counsel are insufficient to overcome representations made during the guilty-plea hearing. *See Via v. Superintendent, Powhatan Corr. Ctr.*, 643 F.2d at 171.

Petitioner's bypassed claim of ineffectiveness of plea counsel with respect to the failure to move to withdraw or advise Petitioner to withdraw his guilty plea is not a substantial one because, as found by the PCR court in connection with the claim of ineffectiveness for failure to object to the SLED agents' testimony,[5] plea counsel provided Petitioner with adequate information and advice regarding his options to go to trial or plead guilty, App. 201-03, and he made an appropriate tactical decision to address any potential harm from that testimony by presenting several witnesses who disputed the agents' characterization of Petitioner as a "drug kingpin" and directly contradicted the agents' description of Petitioner's daily activities. App. 200-01; *see also* 20-25. Plea counsel also made extensive pre-sentencing mitigation argument and filed a post-sentencing motion to reconsider the sentence wherein he argued that the agents' testimony was improperly presented and "unsubstantiated." App. 13-19; ECF Nos. 18-10; 18-11 at 2-3.

---

[5] It is settled that a federal district court considering a habeas-corpus matter gives deference to findings by the state court. *Wilson v. Ozmint*, 352 F.3d 847, 858-59 (4th Cir. 2003). Also, a state court's credibility decisions are entitled to deference by this court. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("[F]ederal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."); *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008).

Moreover, as the PCR court noted and as is shown on the transcript of the plea hearing, the plea court provided Petitioner with extensive information about each of the charges to which he was pleading and about the potential sentences he could receive on each charge. During the plea colloquy, the plea court explicitly informed Petitioner that he could withdraw his plea at any time by stating, "[n]ow, you have the right to a jury trial, and *if you want a jury trial, you stop me at any time in this process and we will then arrange for you to have a jury trial*." App. 5 (emphasis added). Petitioner acknowledged that he understood those rights, but stated that he still wanted to plead guilty. App. 6. Petitioner was given multiple opportunities to withdraw his plea both before and after the SLED agents' testimony, but he consistently responded to each such opportunity given by the plea court by confirming his desire to plead guilty and that his decision was his own and made with adequate information, advice, and consultation with plea counsel. App. 2-3, 4, 5-6, 20. Although Petitioner testified at the PCR hearing that he was "being untruthful" and was only answering the plea court's questions affirmatively "on advice of counsel," App. 87, 91-92, those are unsubstantiated, after-the-fact statements, which are not sufficient to overcome the presumption of truth applicable to responses made at a plea colloquy.

The undersigned's independent review of the record does not support Petitioner's assertion that his plea counsel provided him with ineffective assistance of counsel with regard to the SLED agents' testimony and its effect on his plea or that his PCR counsel was ineffective in failing to raise this "insubstantial" issue in the PCR proceedings. As a result, Petitioner cannot meet the initial requirement for application of *Martinez v. Ryan*: that the bypassed claim was "substantial." *See Gray v. Pearson*, 526 F. App'x 331, 333 (4th Cir. 2013) (under the first requirement of the *Martinez* exception, a petitioner must "demonstrate that the underlying ineffective-assistance-of-trial counsel claim is a substantial one, which is to say that the

[petitioner] must demonstrate that the claim has some merit."). Legal counsel is not required to bring every possible claim before a court to avoid being found ineffective, *see Jones v. Barnes*, 463 U.S. 745 (1983) (finding that counsel has no constitutional duty to raise every non-frivolous claim on appeal); and, in absence of PCR counsel ineffectiveness, Petitioner does not show the required cause for the procedural default under *Martinez*. *See LaRoche v. Dunlap*, No. 4:14-CV-00222-JMC, 2015 WL 1298473, at *11 (D.S.C. Mar. 23, 2015) (petitioner did not establish a "substantial" ineffective assistance of trial counsel claim and "failed to meet the requirements of *Martinez* to show that his PCR counsel was ineffective"), *appeal dismissed*, 607 F. App'x 323 (4th Cir. 2015); *see also Sexton v. Cozner*, 679 F.3d 1150, 1161 (9th Cir. 2012) ("Because [the petitioner] has not shown that [PCR counsel] was ineffective, he has not shown cause to excuse his procedural default, and therefore, has not shown that his case warrants remand under *Martinez*."). Because Petitioner has not shown the required "cause" under *Martinez v. Ryan* to excuse his procedural default of this Ground, this court need not consider the issue of prejudice under the procedural-default analysis. *See Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995) (once a claim is determined to be procedurally barred, the court should not consider the issue on its merits); (*Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into federal court."). Furthermore, Petitioner has not argued and cannot show that this court's refusal to consider the merits of his bypassed Ground Two would result in a miscarriage of justice because he does not claim to be actually innocent of the charges to which he pleaded guilty and there is nothing in the record showing anything "truly extraordinary" about Petitioner's claims. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Accordingly, because Petitioner has not sustained his burden of showing cause for his procedural bypass of Ground Two, the

36

undersigned will not discuss the merits of this Ground and recommends that summary judgment on this Ground be granted to Respondent.

IV.     Conclusion

The undersigned has considered each of Petitioner's Grounds for habeas-corpus relief and recommends that each be dismissed. Accordingly, for the foregoing reasons, it is recommended that Respondent's Motion for Summary Judgment, ECF No. 19, be GRANTED and that the Petition in this case be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

December 1, 2015                                        Kaymani D. West
Florence, South Carolina                          United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).